CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED

1/31/2023

LAURA A. AUSTIN, CLERK
BY: s/ ARLENE LITTLE
     DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| LAURA J.[1], | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Civil Action No. 6:21cv00058 |
| | ) |
| KILOLO KIJAKAZI, | ) |
| **Acting Commissioner of Social Security,** | ) |
| | ) |
| | ) |
| **Defendant.** | ) |

## REPORT AND RECOMMENDATION

Plaintiff Laura J. ("Laura") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding her not disabled and therefore ineligible for disability insurance benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433. Laura alleges that the Administrative Law Judge ("ALJ") erred by failing to properly account for her severe pain from degenerative disc disease and rheumatoid arthritis, and by rejecting the opinion of her treating physician, Verna Guanzon, M.D. I find that the ALJ failed to explain her analysis of Laura's allegations of her pain and limitations. Accordingly, I **RECOMMEND GRANTING in part** Laura's Motion for Summary Judgment (Dkt. 12), **DENYING** the Commissioner's Motion for Summary Judgment (Dkt. 14), and **REMANDING** this case for further administrative proceedings consistent with this opinion.

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence exists to

---

[1] Due to privacy concerns, I use only the first name and last initial of the claimant in social security opinions.

support the Commissioner's conclusion that Laura failed to demonstrate that she was disabled under the Act.[2] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and alterations omitted); see also Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (emphasizing that the standard for substantial evidence "is not high"). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Mastro, 270 F.3d at 176 (quoting Craig v. Chater, 76 F.3d at 589). Nevertheless, the court "must not abdicate [its] traditional functions," and it "cannot escape [its] duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

However, remand is appropriate if the ALJ's analysis is so deficient that it "frustrate[s] meaningful review." Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015) (noting that "remand is necessary" because the court is "left to guess [at] how the ALJ arrived at his conclusions"); see also Monroe v. Colvin, 826 F.3d. 176, 189 (4th Cir. 2016) (emphasizing that the ALJ must "build an accurate and logical bridge from the evidence to his conclusion" and holding that

---

[2] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

2

remand was appropriate when the ALJ failed to make "specific findings" about whether the claimant's limitations would cause him to experience his claimed symptoms during work and if so, how often) (citation omitted). I find that remand is appropriate here because the ALJ's opinion fails to explain how she discounted Laura's testimony regarding her pain and limitations.

## CLAIM HISTORY

Laura filed for DIB in January 2020, claiming that her disability began on July 27, 2019, due to rheumatoid arthritis, lupus, leg cramps, back spasms, fibromyalgia, and neurological disorder. R. 205, 216. Laura's date last insured is December 31, 2024; thus, she must show that her disability began on or before this date and existed for twelve continuous months to receive DIB. R. 150; 42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B), (d)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a). The state agency denied Laura's application at the initial and reconsideration levels of administrative review. R. 205–13, 216–28. On March 18, 2021, ALJ Deborah Foresman held a hearing to consider Laura's claim for DIB. R. 168–204. Counsel represented Laura at the hearing, which included testimony from vocational expert Kathleen Sampeck. On May 5, 2021, the ALJ entered her decision analyzing Laura's claims under the familiar five step process[3] and denying her claim for benefits.[4] R. 149–61.

---

[3] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

[4] Laura was 51 years old on her alleged onset date and 53 years old on the date of the ALJ's opinion, making her an individual closely approaching advanced age under the Act. R. 205.

The ALJ found that Laura was insured at the time of the alleged onset and that she suffered from the severe impairments of degenerative disc disease of the lumbar spine and inflammatory arthritis. R. 152. Regarding her mental impairments, Laura's anxiety was non-severe. Id. The ALJ found that Laura was mildly limited in the broad functional areas of understanding, remembering, or applying information, and concentrating, persisting, or maintaining pace. R. 152–53. The ALJ found Laura had no limitations in the broad functional areas of interacting with others and adapting or managing oneself. Id.

The ALJ determined that Laura's mental and physical impairments, either individually or in combination, did not meet or medically equal a listed impairment. R. 154. The ALJ specifically considered listing 1.15 (disorders of the skeletal spine resulting in compromise of a nerve root), listing 1.16 (lumbar spinal stenosis resulting in the compromise of the cauda equina), and listing 14.09 (arthritis).

The ALJ concluded that Laura retained the residual functional capacity ("RFC") to perform a limited range of light work, including lifting or carrying 20 pounds occasionally and 10 pounds frequently, sitting for six hours in an eight-hour day, and standing/walking for six hours in an eight-hour day. R. 155. Laura can also push or pull as much as she can lift or carry. Id. She can occasionally climb ramps or stairs, balance, kneel, crouch, crawl, and stoop. Id. She can frequently handle and finger bilaterally. Id. Laura can never climb ladders, ropes, or scaffolds. Id. The ALJ determined that Laura was unable to perform any past relevant work but could perform jobs that exist in significant numbers in the national economy, such as cashier, retail marker, and package sorter. R. 160. Thus, the ALJ determined that Laura was not disabled. R. 161. Laura appealed the ALJ's decision, and the Appeals Council denied her request for review on September 28, 2021. R. 1–4.

## ANALYSIS

Laura alleges that the ALJ failed to properly account for her severe pain from degenerative disc disease and rheumatoid arthritis. Laura also alleges that the ALJ failed to provide sufficient reasons for rejecting the opinions of Laura's treating physician, Dr. Guanzon.

### A. Medical History Overview

1. Medical Treatment

Laura has a history of back pain and rheumatoid arthritis. During the relevant period, Laura saw several healthcare providers, including her primary care provider, Dr. Guanzon. Laura's primary complaint to her providers was pain rating it as high as an 8/10 on the pain scale and stating that it had worsened since 2019. R. 497, 520, 524, 591, 705, 744, 829.

Laura specifically complained to her providers of back pain and received injections, medial branch blocks, and medications to ease her pain. R. 476–77, 481, 498, 502, 520, 735. Laura's prescribed medications included Gapapentin for nerve pain and the narcotics hydrocodone and oxycodone. R. 486, 505, 765. An MRI of Laura's lumbar spine in May 2020 showed degenerative changes in the lower lumbar spine, along with mild spinal canal and mild neuroforaminal narrowing. R. 711–12. The MRI showed no critical spinal canal or critical neuroforaminal narrowing. Id. At a July 2020 visit to orthopedic specialist Islam Saleh, M.D., Laura stated that she had no improvement in her back pain symptoms with injections. Dr. Saleh recommended "weaning her down off of [oral opioids] as there is no clear indication for her to be on high dose opioids from a lumbar spine standpoint." R. 764.

The providers also helped Laura manage her rheumatoid arthritis. Laura had several swollen joints and received injections and medications, like methotrexate and Humira, to ease her symptoms. R. 485–86, 502. X-rays of her hands and feet from June 2019 showed mild joint

5

and carpometacarpal degenerative changes and decreased bone mineral density. R. 653–54. The x-rays showed no erosive changes or findings to suggest inflammatory arthropathy. Id.

At some visits, providers documented that Laura had a limited range of motion in her back and hands, tenderness, and had trouble bending, twisting, sitting for long periods of time, and gripping things. R. 484, 497, 744, 828. She also had positive facet loading and weakness in her lower extremities. R. 706, 736, 744. At other visits, providers documented that Laura had a normal range of motion and was able to walk without difficulty. R. 615, 706, 744, 750. Laura often uses a cane to walk, but she was not prescribed a cane by her providers. R. 179, 706, 736.

2. Medical Opinions

In July and October 2020, state agency medical consultants William Rutherford, Jr., M.D., and David Bristow, M.D., reviewed the record and found Laura capable of a limited range of light work. R. 210–11, 224–25. The ALJ found these opinions persuasive. R. 158. In October 2020, state agency psychologist consultant Joseph Leizer, Ph.D., found that Laura's anxiety was a non-severe impairment. R. 222. The ALJ found this opinion persuasive. R. 158.

Dr. Guanzon provided two opinions in 2019, neither of which the ALJ found persuasive. R. 159. Dr. Guanzon's opinions included a note dated July 3, 2019, that Laura reported having more difficulty doing tasks at work and that she would not be able to work much longer due to her pain. A Continuing Disability Physician's Statement dated September 24, 2019, stated that Laura had not been released to go back to work, that there was no expected to return to work date, and that Laura's disability began on July 28, 2019. R. 498, 500. The ALJ stated that "Dr. Guanzon's statements pertain to an issue that is reserved for the Commissioner, are conclusory without supporting statements, and appear to be based solely on the claimant's subjective allegations of pain." R. 159.

**B. Subjective Allegations and the ALJ's Failure to Consider Pain**

Laura alleges that the ALJ failed to properly assess her subjective allegations regarding pain. Laura argues that the ALJ erred in her evaluation of the intensity and persistence of Laura's pain, and the extent to which it affects her ability to work. Laura argues that the ALJ incorrectly concluded that her treatment was conservative, disregarded her pain testimony, falsely concluded that she did not have debilitating back or leg pain, and incorrectly rejected her pain allegations on the ground she did not comply with taking medication. Pl.'s Br. at 12–21, Dkt. 13. The Commissioner counters that the ALJ properly considered Laura's imaging, symptoms, medication, medical treatment, and daily activities to determine that Laura can perform light work. Def.'s Br. at 6–13, Dkt. 15. I agree that the ALJ's opinion does not accurately consider or account for the severity of Laura's pain, which is repeatedly documented in the record.

Despite consistent treatment notes reflecting Laura's chronic pain, the ALJ's opinion fails to discuss or even refer to the severity of Laura's pain level. The ALJ does not mention or discuss that Laura's providers prescribed oxycodone and hydrocodone for pain, along with Gabapentin for nerve pain. The ALJ's failure to fully discuss the record evidence establishing Laura's pain level is a critical error, as the ALJ discounted Laura's subjective reports of pain and limitation in the decision, finding her allegations "inconsistent" with evidence in the record.

Under the regulations implementing the Social Security Act, an ALJ follows a two-step analysis when considering a claimant's subjective statements about impairments and symptoms. SSR 16-3P, 2017 WL 5180304 (S.S.A. Oct. 25, 2017); 20 C.F.R. §§ 404.1529(b)–(c), 416.929(b)–(c). First, the ALJ looks for objective medical evidence showing a condition that could reasonably produce the alleged symptoms, such as pain. Id. at *3, §§ 404.1529(b), 416.929(b). Second, the ALJ must evaluate the intensity, persistence, and limiting effects of the

claimant's symptoms to determine the extent to which they limit the claimant's ability to work. Id. §§ 404.1529(c), 416.929(c). At this step, objective evidence is not required to find the claimant disabled.  Thus, the ALJ must "examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." Id.

 Here, the ALJ found that Laura had conditions that could reasonably produce her alleged symptoms. R. 156. However, the ALJ found that Laura's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" Id. The ALJ noted that while Laura's impairments impose some limitations, "the degree of limitation that is consistent with the record has been accounted for by the restrictions noted in the residual functional capacity[.]" R. 158.

The ALJ described Laura's treatment as "conservative," citing her lack of back surgery, and noted that her treatment gave her at least partial relief. Id. However, not all pain-inducing conditions are properly treated by surgery. See Arakas v. Comm'r, 983 F.3d 83, 102 (4th Cir. 2020) ("Arakas cannot be faulted 'for failing to pursue non-conservative treatment options where none exist.'" (citing Lapeirre-Gutt v. Astrue, 382 F. App'x 662, 664 (9th Cir. 2010))). While Laura's doctors had not recommended more invasive treatment for her chronic back pain or rheumatoid arthritis, during the hearing, Laura testified she had an upcoming appointment to see if she was a candidate for surgery. R. 198. The ALJ also mischaracterized Laura's complaints of pain, writing that she never complained of "debilitating back or leg pain." R. 158. However, Laura reported average pain as high as an 8/10 on the pain scale and said her pain had been worsening since 2019. R. 497 (7/10 average pain, 10/10 worst pain), 591 (persistent pain

8

gradually worsening), 705 (worsening pain), 744 (8/10 pain). Likewise, the ALJ failed to mention that Laura was consistently prescribed medications for her pain, including Gabapentin and the narcotics hydrocodone and oxycodone. R. 486, 505, 765. The only mention that the ALJ makes of Laura's prescribed narcotic use is to mention that Dr. Saleh "recommended she wean off of opioid medication[.]" R. 157.

The ALJ supported her decision by concluding that Laura's testimony was not supported by objective findings on examination, which revealed a normal gait and ability to ambulate without a cane. R. 158. The ALJ noted that "[p]hysical examination and imaging showed a few symptoms of nerve root compromise, but objective findings were mild." Id. However, these objective physical findings do not contradict Laura's degenerative disc disease or her rheumatoid arthritis, both of which have been shown by MRIs, x-rays, and physical exams, and do not refute her allegations of pain. Compounding this problem, the ALJ failed to discuss multiple visits where providers documented that Laura had a limited range of motion in her back and hands, tenderness, and had trouble bending, twisting, sitting for long periods of time, and gripping things, and had positive facet loading and weakness in her lower extremities. R. 484 (active range of motion limited in low back), 497 (active range of motion limited in the "low back (bending, twisting or sitting for long periods of time)" and limited gripping in both hands), 736 (positive facet loading bilaterally), 744 (limited trunk flexion and positive facet loading test). The ALJ also failed to discuss treatment notes indicating that Laura was "very much in pain and having difficulty sleeping due to it." R. 468, 504.

"[T]he ALJ must build an accurate and logical bridge from the evidence to his conclusion that the claimant's testimony was not credible[.]" Brown v. Comm'r Soc. Sec. Admin., 873 F. 3d 251, 269 (4th Cir. 2017) (internal quotations omitted). Here, the ALJ failed to do so. The ALJ

9

failed to discuss Laura's pain, much less "build an accurate and logical bridge" from the evidence to the ALJ's conclusion that Laura's statements about her pain were inconsistent "with the medical evidence and other evidence in the record[.]" R. 156. The medical records reflect that Laura has extreme pain that is managed by several medications, including narcotics and injections. The ALJ's reliance on a mischaracterized pattern of "normal" exam findings to dismiss Laura's allegations as "inconsistent" with the record renders the decision unsupported. See Lewis v. Berryhill, 858 F.3d 858, 866 (4th Cir. 2017) ("[S]ubjective evidence of pain intensity cannot be discounted solely based on objective medical findings.").

The ALJ also noted that Laura was given partial relief by her treatment and that "her medications worked when she took them." R. 158. However, this does not reflect Laura's explanation at the hearing that she takes her medication faithfully and that she only stopped taking some of her medications when her providers disagreed over which provider would handle prescribing medications. R. 186–87. Additionally, treatment notes indicate that Laura had some financial difficulty obtaining her medications, which the ALJ likewise failed to consider. R. 484 (Dr. Guanzon noting in a January 2020 treatment note that Laura "is back on Humira (due to financial issues)"), 491 (Dr. Guanzon noting in an October 2019 treatment note that Laura was "[c]urrently in more pain because she could not afford getting her Humira shot"), 504 (Dr. Guanzon noting in a January 2019 treatment note that Laura stopped Humira for six months "due to insurance"). "A claimant may not be penalized for failing to seek treatment she cannot afford; '[i]t flies in the face of the patent purposes of the Social Security Act to deny benefits to someone because he is too poor to obtain medical treatment that may help him.'" Lovejoy v. Heckler, 790 F.2d 1114, 1117 (4th Cir. 1986) (quoting Gordon v. Schweiker, 725 F.2d 231, 237

(4th Cir. 1984)). Laura's inability to pay for her medication should not be a factor in denying her DIB.

Finally, the ALJ fails to consider that, even though Laura may experience partial pain relief from treatment, she remains in substantial pain, such that her pain is not reasonably controlled. Indeed, even while taking her medication, Laura continued to complain about pain that was as high as an 8/10 on the pain scale. R. 744, 765. See Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) ("If a symptom can be *reasonably* controlled by medication or treatment, it is not disabling.") (emphasis added).

I recognize that it is not my function to conduct a blank slate review of the evidence by reweighing conflicting evidence, determining credibility, or substituting my judgment for the ALJ's when "reasonable minds could differ." See Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012); Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). In fact, I am precluded from doing so; it is the duty of the ALJ to explain the basis for her opinion. However, here, the ALJ failed to adequately consider Laura's complaints of pain and limitations and relied upon unpersuasive and unsupported reasoning to discount Laura's alleged impairments. Accordingly, I conclude that the ALJ's decision regarding Laura's RFC is not supported by substantial evidence.[5]

---

[5] Because I find that remand is warranted based on the ALJ's failure to adequately analyze and account for Laura's pain level and limitations, Laura's additional allegations of error will not be decided. See Boone v. Barnhart, 353 F.3d 203, 211 n.19 (3d Cir. 2003) (remanding on other grounds and declining to address claimant's additional arguments).

## CONCLUSION

For the reasons set forth above, I **RECOMMEND** entering an order **DENYING** the Commissioner's motion for summary judgment, **GRANTING in part** Plaintiff's motion for summary judgment, and **REMANDING** this case to the Commissioner.

The clerk is directed to transmit the record in this case to Norman K. Moon, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days. Any adjudication of fact or conclusion of law rendered herein by the undersigned that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings, as well as to the conclusion reached by the undersigned, may be construed by any reviewing court as a waiver of such objection, including the waiver of the right to appeal.

Entered: January 31, 2023

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge